Madam Clerk, please call the last case of the morning. Good morning, gentlemen. My name is David Seffelt. I'm here representing the petitioner Michael Duckett. Michael Duckett is a 54-year-old who hasn't been able to drive his cab since his accident when he was 49. The case is one that involves unrebutted testimony of Mr. Duckett. He is the sole testifier in the case. It also involves the unrebutted medical report of Dr. William Payne, who is the treating orthopedic surgeon. He is not my client's primary care physician. Did you represent Mr. Duckett at arbitration? Yes, I did. Specifically, the commission based its decision on, the commission said there wasn't sufficient evidence in the record to prove causation. Correct. You introduced a narrative report by Dr. Payne. Correct. Prior to introducing that narrative report, you struck from that letter his opinion on causation. That was a condition of allowing it in from defense counsel. That was an issue that was raised that morning. Causation was never an issue until then. You did that, though, right? I mean, so to it, the report was submitted without his causation opinion. His last sentence. Right. So the only thing in the record, in any of Dr. Payne's medical records, was a general statement that his injuries weren't related, right? I believe that's correct. They'd have to look at that report. He was in two accidents. That's correct. Both of them were at work. No, they were not. They were not both at work. The first accident that occurred on August 9th was on his way to work. He had not arrived at work yet. All right. So in any event, the only thing we have is this, it is work-related. That's correct. And they said that's not sufficient. Why is that against the manifest way to the evidence? I mean, in addition, they found him not credible based on the medical records that were introduced at the time of the arbitration because there were various inconsistencies about how long he had back pain and so forth. I think that's a greater problem you need to address because the commission felt that the medical records contradicted the claimant's testimony that he had no problems prior to the second accident. You know, credibility is within the commission's problems. So how do you address that? I think that we're assuming a few things. I think that you're assuming that the commission said he said he had no problems before. He didn't say he had no problems. He said he had no back problems. Now, we're talking about a plain guy who had an injury to his head and his elbow and his knee in the first accident. He had some whiplash-type conditions, which is the reason why he asked Dr. McGarry on his last visit, I think it was September 20th, to, if he could have an orthopedic referral, to double-check his neck. Because as a cab driver, you have to turn a lot, you know, and check behind you. And he was having trouble doing it, I forgot, one way or the other, to the left or to his right. And then, you know, unfortunately, before, between September 20th and the accident with Dr. Payne, his orthopedic, which wasn't until November 1st, he had his second accident on, I believe, October 19th. After that accident, that was a tremendous accident, where he was rear-ended by a car going 40 to 50 miles an hour. I mean, it was so bad that his seat-back was broken, and he went like flap-flap on his back. The focus of his treatment changed from what may have still remained and may not have remained as a neck sprain that he reported a month earlier, to his lower back and his leg. Now, I simply asked him, have you ever had any problems with your back before? And he said, no. Not thinking that everybody up here or down there was going to think that the neck is part of his back. I mean, I didn't even think to address that at the hearing, that, well, wait a minute, didn't you have some problems that you wanted follow-up care for? There was no cross-examination. There was no chance to rehabilitate. I just merely moved on with the questioning. And another thing that wasn't reflected, it hasn't been reflected in any opinion, and I think it's extremely important, is the fact that after the first accident, Michael only missed three days of work. He missed the next two days. Then he went to work, and then he saw the doctor on day number, what would that be, number four, after that first accident. So he missed three days of work in the week of the first accident. And then he reported to full duty. This guy worked six days a week, 10 to 12 hours a day as a cab driver. There were no restrictions. We submitted his pay records, which show that, in fact, he worked from whatever that would be, August 13th or something, all the way to the accident, October 19th. I know there's one week where he only worked five days, but every other day, every other week, he worked six days a week without any restriction until the second accident. Now, certainly the aggravation is obvious. He couldn't work after the second accident. He was scheduled for MRIs. He was recommended for pain control, physical therapy, which he was never able to get because it was denied by his employer somehow. And to this day, he hasn't received the necessary medical treatment. Again, this is a 19B. It was unrebutted. His testimony, yes, it could have been better. When you say it's unrebutted, it was unrebutted in the testimony. It was not unrebutted by the medical records, was it? That seems to be the whole – let me pin this down so we're satisfied that we're talking about the same issues that you say was unrebutted. The medical evidence stated – he said, did you ask him, did he have any back problems? He says no. However, on October 21st, it was 2011, there was a cervical spine X-ray report, correct? Correct. The report included a medical history of a motor vehicle accident two months prior with upper back pain. In addition, when the claimant saw Dr. Payne two weeks after the second accident on November 1st, 2011, the claimant reported low back pain for almost a month. Well, how can you say there's no contradiction to his testimony that he had no back problems? Well, my customer is a very simple guy. He also got the date he went to the doctor after the accident. Well, he said he went to the doctor the next day after the accident when, in fact, he went to the doctor's office the second day after the accident and had the X-rays of which you're referring, and then didn't see the doctor for three days until that Friday. So, to say that the records are – rebut my guy's own testimony, I think, puts way too much weight on the fact that he's a simple guy given a – Well, doesn't the commission make the determination that he's a simple guy talking an ordinary length? I mean, can we substitute our judgment for the commission? They never say he didn't have any problems. You're saying that a normal person might say that under the circumstances, yet the medical records ostensibly don't jive with his testimony, and the commission found that it contradicted him. If you look at Dr. McGarry's records from after the first accident and other parts of Dr. Payne's record after the second accident, they both say that the neck was essentially okay. He was essentially okay after the first accident. But they take one sentence out of it and say that rebuts him. The manifest weight is everything, not just – But we don't put that on specific things. You can't say we should look at this, we should look at that. That's really not our role. We have to look at whether the evidence – whether the commission's decision is against the manifest weight. Is the opposite conclusion clearly apparent based on the totality of the evidence? That's what we look at. We don't parse certain parts of it. And they had a problem. They found that the medical evidence contradicted the claimant's testimony. That's clear. That's what arbitrator Flores did, and the commission just rubber-stamped. They had no opinion on it whatsoever. Is there any evidence in the record of any treatment for a low back injury prior to the second accident? No, none. Any evidence in the record that he complained of low back pain prior to the second accident? None. Not in the emergency room, not in Dr. McGarry's office with the two follow-up visits. No, none. That's the whole point that I'm making. It's clear that the second accident aggravated or created whatever conditions he was presenting with. No, there is no question that he received treatment for a low back injury after the second accident. Correct. There's none. That's not. That's even the only case of treatment since the second accident. That was it. Other than having an MRI of the neck, having a computerized radiograph, the x-ray, on October 21st, I think it was, and then having an MRI after visiting with the orthopedic surgeon near the end of November, just pictures of the neck. There's been no treatment to the neck whatsoever, no recommendation of treatment to the neck whatsoever. That said, and we've gotten to the point where I think that the conclusion, the employer didn't bring any conflicting testimony. There's nothing in the medical records that I recognize as standing alone being the critical saying that he hurt his lower back in the first accident. So there's contemporaneous medical support for his receiving an award. There was no independent medical exam posed. There was no cross-examination. There's no co-employee testimony contrary or witness testimony contrary. There's no application for medical benefits that say he was hurt at some other place or at some other time. We've got the treater's opinion connecting, even though, albeit, we're in another five-word line. It should be clear to this court, the line of cases, that the presenting condition need not be the, the accident complainant need not be the only cause, that it merely needs to be an aggravating and not just a precipitating cause. It's clear in this case that whatever he presented with after that second accident, his back was new and his back was bad and it didn't exist before. So whether the neck aggravation counts, our concern is that this boy can't get back to work without having pain control in his lower back. I believe that a manifest weight favors reversal. Thank you, Counselor. Counsel may respond. Thank you, Honorable Justices. My name is Casey Hunter and I represent Sock Trail Taxi Company. I'm asking today that you find that the Commissioner's decision is not against the manifest weight of the evidence and ask that you adopt and affirm your opinion. The trial is about credibility. There is a huge credibility in this case. The Petitioner testified under oath on the record that he did not have any prior back pain prior to the October 19, 2011 accident. This was found inconsistent with several medical documents, not only from two different positions but also diagnostic images as well. Justices bring up the fact, or Counsel brings up the fact, the reason he testified that he had no prior back pain because there was a language barrier. He just misunderstood the question. Well, if you look at the transcript, following that line of questioning, he also talks about his neck and asks him about the prior accident regarding his neck complaints. Not only does he say that he didn't have any prior back pain prior to the October 19, 2011 accident, he also says that regarding the August 12, 2011 accident where he injures his neck, he testified that he's fully recovered from that accident prior to the October 19, 2011 accident. The arbitrator notes both of those, notes his testimony in the transcript and also in person, and she finds that both of these statements are inconsistent based on the medical records. We have medical records from Dr. McGarry, October 24, 2011, noting that this was his second event of back pain. Not his first event, but his second event of back pain, which would, an inference would show that he was already treating for back pain prior to our accident. Isn't there a difference between low back pain and back pain near the neck? You're correct, Your Honor, and if you look at his record, it's second event of low back pain. There's also some reference of upper back pain as well, and that's why the diagnostic images. And that was before the second accident, right? Yes. The cervical x-ray report said he also referenced upper back pain in addition to the later lower back pain. Yes, cervical diagnostic image in lumbar. The cervical says treatment of motor vehicle accident two months ago, and on the same date he had a lumbar, which indicated a history of low back pain, which would inference that he was already treating for his cervical and lumbar back when these x-ray images. Did he ever actually receive any treatment for the lower back pain that anyone can identify? The only medical records that came into trial, Your Honors, were post-October 19, 2011. Counsel tries to admit additional medical records at the circuit court level, which I am asking, Your Honors, today to strike from the evidence based on the fact that the proofs were closed after arbitration. And the arbitrator noted that there was an absence of any medical records after the first accident. So all we have before us is medical records after the second day of the accident. And if you look at these records that are in the record, you can clearly see that he was treating both for cervical and back pain up until the October 19, 2011 accident. And to continue, this isn't a case where there's just not one document that's inconsistent with his testimony. There's four separate documents that are clearly inconsistent with his testimony, one of those being the October 24, 2011 note from Dr. McGarry, who reports a second event of lower back pain. He later treats of Dr. Payne on 11-1-11, who indicates that he's had lower back pain for over a month, which would put him prior to our accident in this case. We also have the two diagnostic images that were performed on the same day. And if you read them together, one indicates a motor vehicle accident two months ago for upper back pain. The other one reads history of lower back pain from motor vehicle accident. Let me ask a point of question. Let's assume that he has an explanation from some of these inconsistencies. Let's assume he was or was not treated at all between the first and the second accident. In the final analysis, how much does that matter? If the commission doesn't believe him, if the commission has credibility problems with him, irrespective of what issue it's on, is he entitled to recover? I mean, if they don't believe him and they don't believe he's made his case, what happens then? That's a great point, Justice. I believe once his credibility is attacked in this case, the petitioner cannot meet his burden in this case beyond a preponderance of evidence that his accident was causally related to his current pains of pain. Let me back this up a little bit. The date of the second accident was in October of 2011. Is that correct? That's correct, Justice. All right. What evidence is there of any treatment for lower back injury prior to that date? And don't tell me about it happened two months ago. Just tell me what treatment, what diagnostic test showed that there was an injury to the lower back prior to the date of the second accident? To answer your question, I would point that in the record that was presented at trial, the only medical records that was entered in evidence was post-October 19th, 2011. If your question is regarding were there any medical records entered in evidence prior to that accident, and the answer is no. Okay. So we have no evidence, diagnostic tests of lower back pain prior to an accident. There's no dispute the accident took place, is there? No dispute. And we have treatment for lower back injury post the second accident, then why can't he recover even in a chain of events theory? Because he testified there was nothing wrong with his lower back prior to that date, and there's no evidence there was. Because, Justice, his credibility is at issue. He was asked under oath that did he have any prior back pain prior to this accident. The answer is no. Was your cervical complaints to your neck fully resolved prior to the accident? I only had a few stitches fully resolved. Both of those statements are inconsistent with multiple medical records. That is a big credibility problem that poses that the arbitrator herself views in the court. She understands. You can see there she deserves great deference to view the credibility, the demeanor of how he's answering these questions. And based on that, she found there was a credibility problem with that. And based on that, with his credibility at issue, with that being a sole witness, and without having a narrative report regarding a more in-depth causation opinion, looking at all the evidence together, the petitioner was not able to meet his burden. And I would also point out that counsel tries to corroborate his client by entering evidence after proofs are closed after the record of the first accident. I would ask that the justices not consider that medical evidence but only ask you consider what was presented before the court at trial rather than relitigate the case again. As you know, in workers' comp, there's been many cases tried before the panel without having the availability of obtaining preexisting records, not that they don't exist or not that they're not out there, but we just don't have them in time based on logistics or whatnot. And regardless, we can still find that the petitioner is not inconsistent based on his testimony and based on subjective history of complaints, based on what he tells his doctor after the accident. A lot of the times we find out what his medical history is after the accident based on what he tells his doctors. And that is the case in this matter. We can see that he has been treating for his back and cervical prior to the date of the accident. Regardless of whether we have any actual medical records prior to the date of the accident, we do have the history that he tells his providers, which I would argue is evidence of preexisting conditions. Dr. Payne wrote some notes after his initial examination in November of 2011, didn't he? Yes. And didn't he recite in those notes what the plaintiff had told him in November of 2011? Yes. You're talking about the first one was in August of 2011, the accident when he ran into a truck. In October of 2011, a car ran into him. He essentially was okay and was feeling fair after the first accident when his second accident occurred, which is certainly corroborative of what he testified to at trial. So my question is, if you don't believe, if the arbitrator didn't believe or the commission didn't believe the claimant's testimony at the time of the hearing, why would you discount what he told his doctor in November of 2011, which is less than a month after the second accident? He lied to his doctor too? Justice Hoffman, I believe you can look at it two ways based on that. You are correct. Dr. Payne does evaluate the petitioner and takes a subjective complaint of history regarding how the accident occurred and his prior complaints. One way you can look at it is yes, he is not being truthful to his doctor. He's not being truthful under oath. Why makes us think that he's truthful to his treating physician? We know that he's been treating for lower back pain prior to that accident. If you look at Dr. McGarry and you look at Dr. Payne, there is some inconsistencies with those two doctors. Dr. McGarry clearly on his report says second event of low back pain. This isn't upper back pain. This isn't lower back pain. He puts low back pain, and you could argue that that would be inconsistent with Dr. Payne's. So then not only do you have an inconsistency with the petitioner, but you also have an inconsistency with his treating physicians. So I think there's a credibility not only with the petitioner but just with the evidence in general. A second way you can look at that is the credibility of Dr. Payne himself. Dr. Payne says he just required a few stitches and he was fine. Well, how do you explain the cervical spine diagnostic that was given on October 21, 2011? Did Dr. Payne not know about the cervical spine diagnostic? Did he order the cervical spine diagnostic? Was he aware of the cervical spine diagnostic? If you look at that, the cervical spine x-ray was given before the November 1, 2011. So how can Dr. Payne say his cervical spine complaints were resolved, yet after that visit he has a cervical spine treatment that he's requiring for that first accident? So that in itself is inconsistent. So there's inconsistency with what the petitioner tells us as a doctor, and there's also inconsistency with Dr. Payne's report themselves as well. Your primary defense at trial was employer-employee relationship. I wouldn't say that that was our primary defense. If you look at our stipulation sheet, there were several issues presented. I feel that our trial strategy or what we decided to focus on in the trial is not evidence before Your Honors today. Was causal connection listed as a disputed issue? Yes, it was. If you look at the record on 29C29, the issue is clearly marked as disputed. We also argued that to the commission as well, that we adopted and affirmed the arbitrator's commission. We present the arguments as well. Okay. Thank you, counsel. Thank you, Your Honors. Counsel, you may reply. Well, Your Honors, clearly between the last visit with Dr. McGarry on September 20th, and he was referred to Dr. Payne for neck injury, and October 21st, 2011, when he had his second car accident, there was time for his neck to improve. Like I said before, his work history shows that he only lost three days of work from the first accident. And he was working as a cab driver, and the fact that he was concerned about having pain turning one way or the other and wanted to see a doctor to be sure is not something that we should ignore. I mean, it's clearly facts in the case. The fact that Dr. McGarry, after the second accident, and in ordering the x-rays, says a second event, low back pain, or something to that effect is merely his clarification. I mean, it's different from the history given for the first MRI. Now, it's my opinion. Of course, I'm prejudiced, but it's my opinion. That was a clear misinterpretation of the record by arbitrator floors that's been adopted by everybody else and that the respondent wishes to rely on. But, again, just as Hoffman has indicated very clearly, there is no record of low back pain before the second accident. Other than his acknowledgment. Whose acknowledgment? If you talk about the history, that one line that is in Dr. Payne's record that says about a month before low back pain for about a month, you know. I mean, a commission sees that, right? You're sitting there. You're giving a history to somebody. You know the accident was at least a couple weeks ago. Did he say about a month? Did somebody just, some nurse, write that? I mean, that wasn't questioned. Again, my client's testimony was unrebutted. I mean, there was no cross-examination. Let's clarify that. Payne didn't say, it wasn't in Payne's record, that suggested the accident occurred two months prior to October 21st. That was in the radiologist's report. Payne never said that. What Payne said was that he was okay feeling fair until the second accident. There is some reference in Payne's medical records in November that the accident took place about a month ago. Right. So I suppose we're debating between three weeks and four weeks prior. Yeah. And opposing counsel argued over a month, and he said about a month. We're really picking words there. The credibility was attacked. It was questioned by the arbitrator. It was never attacked. We hear this argument all the time. It's true. The arbitrator found against him on the credibility issue, and the commission affirmed it. Now, you're saying they rubber-stamp it, but that's quite frequently what happens, is it not? Right. The commission adopts the arbitrator's findings, including those on credibility. Right. So you still have that issue to deal with. You can try and explain it away, and you can try and poke holes in the commission's findings, but nevertheless, it's there. I understand. And there's a lot of medical to support what my guy said. There's no testimony against what my guy said. There is the records that were admitted at the trial court level of the previous acts. It makes it absolutely clear that there was no back treatment before. It's admitted by the other side. We can't consider those. There was no back treatment before. We can't consider those medical records that were never introduced before the arbitrator, can we? How can we consider those? I've been asking for them. They're not part of the record. I've been asking for them to be made part of the record since the commission left. Well, after the trial's over, you want to make them part of the record. Well, listen, I've been practicing for 35 years. This is only my second time to be before you guys. This is the first time that a defendant who was going to raise a causal connection because of an earlier accident didn't bring in the pre-accident records. I was surprised by that, okay? If they wanted those records, they could have been there. They were available. I always ask for records from the date of the accident. That makes for the guy's entire chart. That's what the defense does in these cases, you know. So can you see the dilemma we're in, though? I'm sorry? As Justice Stewart pointed out, can you see the dilemma we're in? Notwithstanding the fact these records aren't in the record, we are going to find based on these missing records from the record. Now, how do we say this? Seriously? Dr. Payne issued a report on June the 19th of 2012. What he says in the report, it was his opinion that the October 2011 auto accident aggravated, accelerated, or exacerbated the claimant's back condition and may require surgery. Is there any contrary opinion by any doctor in this record? No. That's the opinion you struck before you introduced that letter into evidence, though, right? How would we consider it? It's not in the record. Well, I mean, you agree with that. There's more evidence. What Justice Hopkins read is the opinion that was stricken before the letter. I just want to make sure you agree with that. But there's more evidence in the record that wasn't considered and isn't referred to because somebody ruled it was irrelevant or whatever, it moved or whatever. And that's the payroll records. I think this is a critical issue. I think it's the strongest point in my case. And that is that my guy went back to work after the first accident. He didn't complain. He didn't miss work. He was working a six-day week, 10 or 12 hours a day. If we didn't have his payroll records, we wouldn't have had any evidence to put on in that regard. But he brought in the stuff to me. We put them in evidence. Guess what? The Irish Mayor commissioned and chose to ignore him completely. Now, what is that? There's clear-cut evidence of aggravation, even without the medical records. Okay. Thank you, counsel. Thank you. Thank you, counsel. This matter will be taken in advisement. This position shall issue. We'll stand in recess until 1-30 this afternoon.